## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES HANTON | : | PRISONER |
| *Plaintiff,* | : | CIVIL NO. 3:02CV997(CFD)(WIG) |
| | : | |
| VS. | : | |
| | : | |
| MARY MARTO, ET AL. | : | |
| *Defendants.* | : | AUGUST 16, 2004 |

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The defendants, Mary Marto, et al., submit this memorandum, exhibits and attachments, and Local Rule 9(c) statement of material facts not in dispute in support of their motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. The plaintiff, a *pro se* inmate, brings this case under 42 U.S.C. § 1983. The plaintiff originally brought this action based on the alleged failure of various state officials to provide dental care. In a supplemental complaint dated July 22, 2002, the plaintiff added an unrelated claim concerning an alleged deprivation of legal property by correctional officials. The defendants have answered the operative complaint. As discussed in more detail in the accompanying memorandum of law, the defendants are entitled to summary judgment for the following reasons:

(a)    There exist adequate state law post-deprivation procedures under which plaintiff can seek relief for his property claim;

(b)    The plaintiff has not adequately alleged retaliation in connection with his property claim;

(c)    The plaintiff fails to state a claim for denial of access to courts;

(d)     The plaintiff fails to allege sufficient personal involvement on the part of defendants Penn and Kelley to state a claim against them under 42 U.S.C. § 1983 with respect to the property claim;

(e)     The property claim is improperly joined with the dental claim and should be severed;

(f)     The defendants are entitled to qualified immunity against an award of monetary damages;

(g)     The plaintiff's dental claim is barred by the doctrine of collateral estoppel;

(h)     The plaintiff fails to state a claim of dental deliberate indifference under the Eighth Amendment[1];

---

[1]     Defendants previously raised these last two arguments against the sufficiency of the dental claim in a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which was denied by endorsement ruling on March 4, 2003, and in a motion for judgment on the pleadings filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, which was denied without prejudice to file a motion for summary judgment by endorsement on March 18, 2003.  Defendants submit, however, that these rulings should not be deemed preclusive under the law of the case doctrine.  As a preliminary matter, application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment. See e.g., Egghead.com, Inc. v. Brookhaven Capital Mgmt. Co., 194 F. Supp.2d 232, 237 (S.D.N.Y. 2002).  Moreover, because the basis for the court's earlier ruling is not clear, the precise law of this case cannot be determined, and therefore should not be deemed controlling.  It should also be noted that the Federal Rules of Civil Procedure suggest that the defense of failure to state a claim is a defense that may be raised repeatedly and at any stage in the proceedings, including by motion for judgment on the pleadings.  See, F.R.C.P. 12(h)(2); see also, Van Voorhis v. District of Columbia, 240 F.Supp. 822, 824 (D.D.C. 1965) ("Moreover, there is a sound reason for not applying the law of the case doctrine where the prior ruling was on a motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure.  The defense of failure to state a claim upon which relief can be granted cannot be waived and can be asserted at the trial on the merits and hence

(i)  The plaintiff fails to allege sufficient personal involvement on the part of defendants Marto, McIntosh, and Malcolm to state a claim against them under 42 U.S.C. § 1983 with respect to the dental claim;

(j)  This action, as it relates to the defendants in their official capacities must be dismissed under the Eleventh Amendment to the United States Constitution.

## I.     BACKGROUND

### A.     The Parties

The plaintiff is a *pro se* inmate.  He has filed a number of lawsuits, none successful, concerning perceived inadequacies in medical treatment.  The defendants in this action for purposes of the dental claim are Mary Marto, Correctional Health Services Administrator; Esther McIntosh, Correctional Health Services Administrator; Cheryl Malcolm, an administrator employed by Correctional Managed Health Care (CMHC), a division of the University of Connecticut Health Center (UCHC); and Dr. Victor Shivy, a dentist employed by CMHC. Named as defendants for purposes of the property claim are three custody officers – Ulysses Clifton, Captain Penn, and Captain Kelley.

### B.     The Present Allegations Concerning Dental Care

In this case, the plaintiff alleges the following:

---

neither the defendant nor the trial court is precluded by a prior ruling on a motion to dismiss from reconsidering the questions previously raised."); Baisten v. Peters, 1993 U.S. Dist. Lexis 1693 * 4 (N.D. Ill. 1993)(same).

- On November 17, 1997, plaintiff was placed on a list to have a temporary filling replaced by a permanent one.

- On November 16, 1998, plaintiff was seen by Dr. Shivy , who refused to replace the filling.

- On May 14, 1999, defendant Marto responded to a letter of complaint regarding the filling that plaintiff had sent to Warden George Wezner. Defendant Marto stated in her response that plaintiff was scheduled to see a dentist.

- On June 2, 1999, defendant Marto responded to a letter of complaint sent by plaintiff to Deputy Warden Calcinari. Defendant Marto again stated that plaintiff was scheduled to see the dentist.

- On August 9, 1999, plaintiff wrote defendant Marto a letter, inquiring when his filling would be replaced. This letter was responded to by defendant McIntosh, who stated that she would look into having the plaintiff transferred in order to facilitate plaintiff's dental procedure. Plaintiff never heard back about the transfer.

- On August 23, 1999, plaintiff wrote defendant Malcolm about his teeth and gums, requesting to be moved to a facility where his filling could be replaced. Defendant Malcolm responded by stating that she would refer plaintiff's complaint to defendant McIntosh and Warden Wezner.

- Plaintiff wrote to Commissioner Armstrong and Warden Wezner directly about his dental concerns. On September 24, 1999, Warden Hector Rodriguez responded to plaintiff's letter to the Commissioner. Warden Rodriguez stated that, according to defendant McIntosh, plaintiff was to be seen by dental staff.

- Plaintiff filed grievances regarding the issue that were not answered.

4

- On December 15, 2000, plaintiff's filling fell out. Plaintiff complained about this fact to defendant Shivy, who refused to address the problem.

- On February 15, 2001 and April 15, 2001, plaintiff wrote defendants McIntosh and Malcolm complaining about the missing filling, but those complaints were not addressed.

### C.    The Allegations, Findings and Ruling In Hanton v. Deong

The present claims were raised and rejected in Hanton v. Deong. In that matter, the plaintiff made the following allegations of dental deliberate indifference:

On January 7, 1998, the plaintiff wrote Dr. Moore [formerly a correctional dentist] about having his temporary filling replaced with a permanent one. Dr. Moore told the plaintiff he had to wait until November of 1998. On November 1997, Dr. Moore was informed that the plaintiff's temporary filling should have been replaced between six months to a year. On January 12, 1999, the plaintiff filed a grievance, which was compromised. The plaintiff was told his filling would be replaced. On February 15, 1998, the plaintiff wrote Dr. Moore again but Dr. Moore refused to replace the temporary filling.

Hanton v. Deong, 3:98CV1648(HBF), Complaint, Exhibit D, ¶ 26.[2]

The defendants in Deong were granted summary judgment on all claims in the Deong matter, including the dental claim premised on the failure to replace Mr. Hanton's temporary

---

[2]    The defendants in that matter included Cheryl Malcolm and Esther McIntosh, both of whom are also defendants in this action. In any event, the defendants here and in Deong were sued in their official capacities, meaning that the State of Connecticut is the real defendant in interest in both matters. This applies to the individual capacity claims as well, given that these state defendants in these matters are indemnified by the state against any award of money damages. In any event, as discussed below, the federal courts no longer require identity of parties as a prerequisite to applying the doctrine of collateral estoppel.

filling.  In granting the defendants' motion, the Court made the following factual findings based

on the evidence submitted by the parties:

> Plaintiff was treated by the dentist on November 17, 1997.  On January 7, 1998, plaintiff filed an inmate request form to see the dentist to replace a temporary filling and requesting a cleaning.  The response dated January 7 states, 'You were told that the list was approximately a year long.  You were placed on the list on 11/17/98.  We'll see you around Nov. 98'.  Plaintiff filed an inmate grievance on January 12, 1999, requesting an appointment to replace the temporary filling with a permanent one.  The grievance was compromised on January 16, stating 'you are on the list to have a filling and a cleaning (scaling).  You will be called when your appointment comes up.  I have seen the book and your name is on the list for both services.'  On February 15, 1998, plaintiff filed another inmate request form for a date with the dentist to replace the temporary filling and for a cleaning.  The response of February 17 states, 'You were placed on the list in November 1997.  Our list is approximately 1 year long.  If any of your teeth are hurting write us back.
>
> Plaintiff was seen at the medical unit on January 9, 12, 15 and 22, 1998, with no notation in the medical record of any vision or dental complaints.  Medical notations during this period also indicate that plaintiff was refusing pain medication and fasting for Ramadan.

See, Hanton v. Deong, 3:98CV1648(JCH)(HBF), Corrected Ruling On Motion For

Summary Judgment, April 8, 2002, (Exhibit E), at pg. 26 (internal citations omitted).  Despite

now alleging that his temporary filling fell out on December 15, 2000, there was no reference to

this having occurred in any of the pleadings or factual record before the court in the Deong

matter.  In fact, defendants' motion for summary judgment, which challenged the sufficiency of

plaintiff's dental claim, was not filed until March 28, 2001 – some 16 months after plaintiff's

filling allegedly fell out.  Plaintiff filed at least five pleadings opposing defendants' motion for

summary judgment between April 10, 2001 and September 13, 2001.  In none of those pleadings

did plaintiff claim that his temporary filling had fallen out, causing him to suffer pain.  Clearly,

had he wanted to make and attempt to support such a claim in the Deong case, he could have.

> **D.      The Plaintiff's Previous Medical Litigation**

The plaintiff is a serial litigant.  A check of the State's Judicial web page shows no fewer

than twenty-two lawsuits and *habeas corpus* petitions brought by the plaintiff.  See, Attached

Printout from the State of Connecticut Judicial Department's Web Page, Exhibit F.  This figure

does not include federal actions and matters before the Claims Commission, of which there are

several.  The following are just a few examples of the plaintiff's prior litigation:

- In Hanton v. Mathiau, No. 3:98CV1388(HBF), the plaintiff sued a variety of correctional officers claiming that his placement in the MacDougall Infirmary on August 7, 1997, violated various provisions of the United States Constitution. That case was dismissed on the merits on September 19, 2000.  Hanton v. Mathiau, Ruling on Defendants' Motion for Summary Judgment, September 19, 2000.

- In Hanton v. Grotta, No. 3:97CV93(WIG), the plaintiff alleged that various correctional officials failed to provide the plaintiff a bottom bunk necessitated by back injuries, failed to treat his injuries, and confined him against his will in the Bridgeport Community Correctional Center Infirmary.  That case was dismissed on the merits.  Hanton v. Grotta, Ruling on Defendant's Motion for Summary Judgment, February 10, 2000.

- In Hanton v. Maleh, No. CV-99-0425788-S, the plaintiff brought this state court malpractice action against DOC Doctor Jack Maleh, alleging that Dr. Maleh negligently treated the plaintiff's  back, neck and knee problems.  This case was dismissed on June 28, 1999; and,

- In Hanton v. Warden, N. CV-97-348836-S, the plaintiff alleged that his confinement at the Bridgeport Correctional Center was illegal in light of the inadequacy of medical care provided for his various medical conditions.  On December 19, 1997, the court dismissed the petition, holding that "the Department of Corrections has not refused treatment of the plaintiff's condition and that there is no basis for any claims that the department is deliberately

indifferent to the petitioner's medical claims[.]"  Id., memorandum of Decision re: Petition for Habeas Corpus, Rush, J., December 22, 1997, at pg. 3.

### E.     The Property Deprivation Allegations in this Matter

In the supplemental complaint (Exhibit B), plaintiff adds a claim against defendants Kelley, Clifton and Penn concerning an alleged deprivation of legal property.  In particular, plaintiff alleges that defendant Clifton deprived plaintiff of legal property after plaintiff's transfer to Radgowski C.I.  Plaintiff alleges in purely conclusory terms that Officer Clifton confiscated his property "after discovering the plaintiff had lawsuits filed against fellow officers[.]"  See, Exhibit B, pg. 5.  There are no factual allegations at all to support this suggestion of retaliatory motive.  Plaintiff further alleges that Officer Clifton informed plaintiff that he had to mail his legal material to a family member.  It should be noted that the legal property at issue is not alleged to relate to this lawsuit or to his dental concerns, but rather is evidently related to claims he was litigating in the Connecticut Claims Commission.

Defendants Penn and Kelley are supervisory officials who are not alleged to have participated in taking plaintiff's property, but rather are alleged to have failed to remedy the deprivation after receiving plaintiff's complaints.  Plaintiff does not allege that he sought relief in state court or in the Claims Commission for the alleged deprivation of legal property.

### F.     The Plaintiff's Previous Litigation Concerning Property Claims

This is not the first occasion that the federal courts have considered plaintiff's property claims against defendant Clifton.  While litigating the case of Hanton v. Tambura, 3:96CV2644(DJS), plaintiff made the same allegation, contending that he could not file his

appellate brief because Officer Clifton had deprived him of necessary legal materials. This claim was made in the context of a motion for injunction filed in the Second Circuit, but ruled upon by the District Court. Defendants in the <u>Tamburo</u> case opposed the plaintiff's motion, submitting the affidavit of Officer Clifton, who rebutted plaintiff's allegations. The district court denied the plaintiff's motion, finding as follows:

> Pursuant to State of Connecticut Administrative Directive 6.10(16), an inmate at a level 4 facility is permitted to keep six cubic feet of property in his cell. Radgowski Correctional Institution is a level 4 facility. Correction Officer Clifton, was employed at the Radgowski Correctional Institution in January 2002, when the plaintiff arrived at the facility with eight or nine boxes of property. Officer Clifton avers that he informed the plaintiff that boxes of property exceeded the amount of property permitted in an inmate's cell under the Administrative Directive 6.10. He also informed the plaintiff that he could designate a portion of his property to be mailed to an addressee of his choice. The plaintiff selected one of his boxes and requested that it be sent to his daughter. The plaintiff informed Officer Clifton that he did not need the documents in the box. If the plaintiff seeks to have the box of documents returned, he may designate another box to be sent out in exchange for the first box.

<u>See</u>, <u>Hanton v. Tamburo</u>, 3:96CV2644(DJS), Ruling and Order, February 4, 2003, Exhibit G, pgs. 2-3 (internal citations omitted).

## II.     <u>SUMMARY JUDGMENT STANDARD</u>

Federal Rule of Civil Procedure 56(c) requires the entry of Summary Judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A factual dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A "material fact" is one whose resolution will affect the ultimate determination of the case. *Id.* In determining whether a material issue of fact exists, the court must resolve all ambiguities and draw all inferences against the moving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.*"* Samuels v. Smith, 839 F.Supp. 959,962 (D.Conn. 1993). (Emphasis added).

Despite any of the above, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256, 106 S.Ct. at 2510; see also, Knight v. United States Fire Insurance Co.,, 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 763 (1987); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Thus, once the moving party has satisfied its burden of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required to go beyond the pleadings by way of affidavits, depositions, and answers to interrogatories in order to demonstrate specific material facts which give rise to a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 265 (1986). "Neither courts nor defendants should be subjected to trials which can be

little more than harassment." Applegate v. Top Associates, Inc., 425 F.2d 92, 96 (2d Cir. 1970). And the defense of qualified immunity is not merely a defense to liability, it is an immunity from suit. Saucier v. Katz, 121 U.S 2151, 150 L.Ed. 2d 272. 2001 U.S. LEXIS 4664 (June 18, 2001).

When Rule 56(e) shifts the burden of proof to the nonmoving party, that party must produce evidence to show the existence of every element essential to the case which it bears the burden of proving at trial. Equimark Commercial Finance Co. v. C.I.T. Financial Services Corp., 812 F.2d 141, 144 (3d Cir. 1987). Where evidence is submitted in support of, or in opposition to, a motion for summary judgment, such evidence must be presented in a manner consistent with its admissibility at trial. See, First National Bank Co. of Clinton, Ill. v. Insurance Co. of North America, 606 F.2d 760 (7th Cir. 1979) (in ruling on summary judgment motion, the District Court properly relied on documents and exhibits identified by affidavit). Unsworn statements of the parties, letters addressed to litigants from third persons, and hearsay which does not fall under one or more of the exceptions listed in Rules 803-805 of the Federal Rules of Evidence, may not properly be considered. See, Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Beyene v. Coleman Security Service, Inc., 854 F.2d 1179 (9th Cir. 1988); Edward B. Marks Music Corp. v. Stasny Music Corp., 1 F.R.D. 720 (S.D.N.Y. 1941).

## III.   ARGUMENT

### A.   Plaintiff Has Adequate Post Deprivation State Law Remedies For His Property Concerns

Plaintiff alleges that defendant Clifton intentionally confiscated and refused to return legal property. Plaintiff does not allege that this deprivation was authorized by policy. Nor does

he allege that he raised his property concerns in state court or in the Connecticut Claims Commission. Nor, finally, does plaintiff allege that he was somehow prevented from raising his property claims in the appropriate state judicial or administrative venues. As discussed below, plaintiff's failure to raise his property claims in the appropriate state forum prevents him from presenting them in the context of a § 1983 action.

In Parratt v. Taylor, 451 U.S. 527, 541-544 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986), the United States Supreme Court held that an individual may not bring an action under 42 U.S.C. § 1983 alleging a violation of procedural due process if his rights were infringed as a result of a "random and unauthorized act" by a state employee and a meaningful post-deprivation state remedy is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984), expanded the Parratt doctrine to cases of intentional deprivation of property by state employees.

In Connecticut, inmates, like all state citizens, may raise claims of deprivation of property with the Office of the Claims Commissioner. See, Conn. Gen. Stat. 4-160 et seq. The Second Circuit Court of Appeals "has held that post-deprivation [state claim] proceedings are sufficient where the deprivation of liberty or property occurred not because of a governmental policy but instead because of the unauthorized act of a state employee." Chen v. City of New York, 51 Fed. App. 352, 353 (2002) (citing, Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880-81 (2d Cir. 1996); Hudson, 468 U.S. at 532; Parratt 451 U.S. at 527); see also, Martin v. Rodriguez, 154 F.Supp. 2d 306, 315 (D.Conn. 2001) (the Connecticut Claims

Commission provides adequate post deprivation remedies for property claims for purposes of Palmer and Parratt.)  Plaintiff has not alleged that he sought relief in the Claims Commission.

Even if the plaintiff's property claim fell outside the jurisdiction of the Claims Commission, he could seek relief in state court by way of an action for conversion.  See, Aetna Life & Casualty Co. v. Union Trust Co., 230 Conn. 779, 790-91 (1994) ("We have defined conversion  as an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . . It is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the ...").

Because plaintiff has not raised his property claim in the appropriate state forum, it must be dismissed.

**B.      Plaintiff Has Inadequately Alleged And Supported A Claim For Retaliation In Connection With His Property Complaints.**

Even if the court were to construe the plaintiff's property allegations a claim of retaliation for filing lawsuits in violation of the First Amendment, the claim would still fail.  Plaintiff's only allegation concerning retaliation is as follows:  "After discovering the plaintiff had lawsuits filed against fellow officers, defendant Clifton confiscated the plaintiff's legal materials for pending cases."  See, Exhibit B, pg. 5.   This conclusory allegation is not sufficient to sustain an actionable claim for retaliation.

13

The Second Circuit Court of Appeals has cautioned that inmate claims must be subjected to exacting scrutiny.  See, Dawes v. Walker, 239 F.3d 489, 492; Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).  In Dawes, the Court of Appeals stated that:

> [W]e note that courts must approach prisoner claims of retaliation with skepticism and particular care. This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act. Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

Dawes, 239 F.3d at 491-92.

The Court of Appeals in Dawes established the analysis for determining the viability inmate claims of retaliation:

> To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.

Dawes, 239 F.3d at 491-92 (emphasis added).

In this instance, plaintiff's claim that his property was taken out of retaliation for filing lawsuits is utterly unsupported by any non-conclusory allegations.   Plaintiff's complaint is notable in what it does not allege:

- Plaintiff does not allege that Officer Clifton said anything that indicated a retaliatory motive; nor does he allege any facts of any nature that would buttress the claim of retaliation.

- Plaintiff does not allege that Officer Clifton was himself sued by plaintiff.

- Plaintiff does not explain why, if Clifton sought to frustrate his legal efforts, he would allow plaintiff himself to select the property that had to be shipped out.

- Nor is it explained why an officer bent on retaliation and frustration of lawsuits against officers would be allow plaintiff to keep <u>any</u> boxes of property concerning many lawsuits against officers.

- Plaintiff does not dispute that his property was in excess of maximum allowable amounts under the governing property matrix.

The court should also consider the findings made in the <u>Tamburo</u> case, particularly that:

- Officer Clifton informed the plaintiff that boxes of property exceeded the amount of property permitted in an inmate's cell under the Administrative Directive 6.10.

- Clifton informed the plaintiff that he could designate a portion of his property to be mailed to an addressee of his choice.  The plaintiff selected one of his boxes and requested that it be sent to his daughter.

- The plaintiff informed Officer Clifton that he did not need the documents in the box.

- If the plaintiff needed the box of documents returned, he could designate another box to be sent out in exchange for the first box.

15

Plaintiff's allegations do not and cannot dispute these facts, which clearly rebut any inference that Officer Clifton's actions were retaliatory. The <u>only</u> support for the retaliation claim is plaintiff's own conclusory, unsupported assertion. As the <u>Dawes</u> court made clear, this clearly does not suffice to surmount summary dismissal.

In addition, as discussed in the next section, the plaintiff cannot state an actionable retaliation claim based on alleged interference with claims pending at the Claims Commission, as those claims are not the sort of litigation activity protected by the Constitution.

Accordingly, the plaintiff's retaliation claim is deficient under these legal standards.

**C.      Plaintiff Fails To Allege An Actionable Claim For Denial Right Of Access To Courts**

Plaintiff's property-related allegations also fail to state an actionable claim for unconstitutional denial of access to courts. Plaintiff alleges that he was incapable of litigating two claims pending before the Claims Commission. As discussed below, even if plaintiff had been hampered in litigating his claims, this would not support an actionable claim for denial of access to courts.

The United States Supreme Court has placed strict limitations on inmate denial of access claims against prison officials. In order to state a claim for denial of access to courts, the plaintiff must allege and prove actionable injury. <u>Lewis v. Casey</u>, 116 S.Ct. 2174, 2180 (1996). As the Supreme Court made clear in <u>Lewis</u>, however, not all impairments of an inmate's litigation efforts will support a constitutional claim. To the contrary:

> [The Constitution] does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip and fall claims. <u>The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration</u>.

<u>Lewis</u>, at 2181-82 (emphasis added).

Plaintiff does not specify the nature of the claims he allegedly was prevented from litigating in the Claims Commission. It can be assumed, based on the limits of the Claims Commissioner's jurisdiction, that those claims did not concern an attack on plaintiff's sentence, seek injunctive relief against unconstitutional conditions of confinement, or seek monetary relief for unconstitutional prison conditions that could not be sought in federal or state court. Certainly, plaintiff could not challenge his conviction in the Claims Commission. The Claims Commission's jurisdiction and authority are limited to ruling on "petition[s] for payment or refund of money by the state or for permission to sue the state[.]" <u>See</u>, Conn. Gen. Stat. § 4-141. The claims Commissioner is not empowered to grant injunctive relief of any nature, including injunctive relief against unconstitutional conditions of confinement. In fact, all Eighth Amendment claims are excepted from the jurisdiction of the Claims Commission because they are otherwise authorized by law, that is, they cannot be raised in the Claims Commission because they can be brought in state or federal court pursuant to 42 U.S.C. § 1983 without permission to sue being granted. <u>See</u>, Conn. Gen. Stat. § 4-142 (excepting claims that are "otherwise authorized by law including suits to recover similar relief arising from the same set of facts" from the jurisdiction of the Claims Commission). Thus, attacks on convictions or

unconstitutional conditions of confinement, which inmates are guaranteed access to courts to prosecute, may not even be raised in the Claims Commission.

Thus, the plaintiff was perforce limited in his claims matters to seeking permission to sue based on alleged negligence by state officials, which falls within the jurisdiction of the Claims Commissioner, but outside the area of litigation that is protected and guaranteed to inmates by the constitution.   In short, therefore, plaintiff was not deprived of any constitutionally protected form of litigation activity.

Moreover, given the availability of more appropriate forums for plaintiff to attack his conviction or challenge the conditions of his confinement, plaintiff cannot be said to have suffered actionable impairment of his right of access.  As plaintiff has amply demonstrated, he is fully capable of filing state court money damages actions, state court habeas petitions, and challenges to the conditions of his confinement in federal court under 42 U.S.C. § 1983.

In sum, plaintiff's denial of access claim should be dismissed.

**D.     Plaintiff Fails To Allege Adequate Personal Involvement On The Part Of Defendants Kelley And Penn Concerning The Property Claim**

Plaintiff alleges that, after Officer Clifton confiscated his property, he (plaintiff) complained to defendants Lieutenant Penn and Captain Kelley, who did nothing to rectify the situation.  As discussed below, these allegations are insufficient to sustain a cause of action against defendants Penn and Kelley under 42 U.S.C. § 1983.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws."   Rizzo v.

Goode, 423 U.S. 362, 370-71 (1976)(quoting, 42 U.S.C. § 1983).  Otherwise put, a "plaintiff must...allege a tangible connection between the acts of the defendants and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  Thus, in order to be held liable under 42 U.S.C. § 1983, the defendant must have a role in subjecting the plaintiff to a deprivation of a federally guaranteed right.  That is to say, a showing of personal involvement is a necessary prerequisite for establishing liability under § 1983.  See, e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987);  Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973), rev'd on other grounds, Graham v. Connor, 490 U.S. 386 (1989); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).

In the prison context, "[a] supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal ; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation."  Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).

The complaint is devoid of allegations that either Penn or Kelley had any involvement in the property-related decisions and actions challenged by plaintiff.  It appears that plaintiff is seeking to hold these defendants liable solely because they hold supervisory authority in the Connecticut Department of Correction.  These allegations simply do not suffice.  In order to state cognizable § 1983 claim, therefore, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the...chain of command."  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Moreover, the Supreme Court has ruled that the doctrine of respondeat superior does not apply under 42 U.S.C. § 1983. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 692-95 (1978).

The fact that plaintiff may have complained to defendant Penn and/or Kelley is immaterial. "The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability." <u>Watson v. McGinnis</u>, 964 F.Supp. 127, 130 (S.D.N.Y. 1997). Indeed, "[i]t is well established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." <u>Higgins v. Artuz</u>, 1997 WL 46505 at *7 (S.D.N.Y. 1997); <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Rivera v. Goord</u>, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (Defendant "merely asserts that he wrote to these [supervisory] defendants [including the Commissioner and Supt.] complaining about the conduct of various Medical and Correctional Defendants and that his complaints were ignored. These allegations are insufficient to hold these Official/Supervisory Defendants liable under § 1983."); <u>Woods v. Goord</u>, 1998 WL 740782 at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints, however, does not render [Supt.]Artuz personally liable under § 1983."); <u>Cox v. Colgane</u>, 1998 WL 148424 at *9 (S.D.N.Y. Mar. 27, 1998) (ignoring letter and request for action not sufficient). Thus, even if plaintiff did complain to defendants Penn and Kelley, and even if those complaints were ignored, they cannot be liable under 42 U.S.C. § 1983.

In sum, therefore, plaintiff fails to state a viable claim against defendant Penn or defendant Kelley.

### E.    The Property Claim Is Improperly Joined Herein

Plaintiff's original complaint concerned the alleged deprivation of dental care against defendants Marto, McIntosh, Malcolm and Shivy.  See, Exhibit A.  The supplemental complaint added an entirely unrelated claim against defendants Penn, Kelley, and Clifton concerning deprivation of legal property.  See, Exhibit B.  These claims obviously have nothing to do with each other and should, therefore, be severed.

Rule 21 of the Federal Rules of Civil Procedure provides that "any claim against a party may be severed and proceeded with separately."  F.R.C.P. 21.  The court may order the severance of a claim where it will serve the ends of justice and further the prompt and efficient disposition of the litigation.  Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977 (1968).  When claims are based on entirely different factual scenarios, they are readily severable.  Spencer, White & Prentis, Inc. v. Pfizer, Inc., 498 F.2d 358, 362 (2d Cir 1974).  In this instance, there is no reason for these disparate claims to proceed together.  Indeed, keeping them together will simply confuse the issues and unnecessarily complicate their resolution.

### F.    Defendants Are Entitled To Qualified Immunity

The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir.1995) (quoting, Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Thus, a public official is also entitled

to qualified immunity when "it was objectively reasonable for him [or her] to believe that his actions were lawful at the time of the challenged act." <u>Cerrone v. Brown</u>, 246 F.3d 194, 199 (2d Cir. 2001). In assessing a claim of qualified immunity, the court must consider the "objective legal reasonableness of the allegedly unlawful official action assessed in the light of the legal rules that were clearly established at the time it was taken." <u>Rodriguez</u>, <u>supra</u>, 66 F.3d at 475 (internal citations omitted). All defendants in this matter are entitled to qualified immunity.

In this case, courts have reviewed the very allegations set forth by the plaintiff and concluded that they do not state viable constitutional claims. With regard to the property claim, the court in <u>Tamburo</u> reviewed the allegations and determined that officer Clifton's conduct was reasonable. As to the supervisory defendants – Penn and Kelley – their alleged involvement was limited to receiving plaintiff's complaints, which as discussed above is not enough to expose them to liability under 42 U.S.C. § 1983.

The court has already held in the <u>Deong</u> matter that plaintiff's dental claims fail under the applicable Eighth Amendment standards. As the present claims are substantially identical to those rejected <u>Deong</u>, the actions of the present defendants can only be described as objectively reasonable.

All defendants are therefore entitled to qualified immunity.

### G.     **Plaintiff's Dental Claim Is Barred By The Doctrine Of Collateral Estoppel**

Collateral estoppel bars relitigation of an issue if "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue

was necessary to support a valid and final judgment on the merits." Boguslavsky v. Kaplan,

159 F.3d 715, 720 (2d Cir. 1998).  This test does not include a requirement that the parties

against whom plaintiffs litigated in the prior proceeding be the same parties they litigate against

in the current proceeding. See, United States v. Mendoza, 464 U.S. 154, 158 (1984).  Under the

doctrine of res judicata, "[a] final judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have been raised in that action." St. Pierre

v. Dyer, 208 F.3d 394, 2000 WL 305936, at *4 (2d Cir. 2000)(emphasis added).     In this

instance, plaintiff is barred from relitigating his dental claims, which were raised, fully and fairly

litigated, and rejected on their merits in Hanton v. Deong.[3]

## H.     Plaintiff Fails To State A Claim For Violation Of The Eighth Amendment

This court has already determined that plaintiff's dental claims are insufficient to state a

claim under the Eighth Amendment.  Specifically, the court held as follows:

> It is clear from other cases that have considered inmate complaints of denial or
> delay of medical treatment that plaintiff's dental and optometric problems do not
> constitute a 'serious medical need.'   Estelle [v. Gamble], 429 U.S. [97] at 106
> [(1976)]; see Dean [v. Coughlin], 804 F.2d [207] at 215 [(2d Cir. 1986)] ('It must
> be remembered that the State is not constitutionally obligated, much as it may be
> desired by inmates, to construct a perfect plan for dental care that exceeds what
> the average reasonable person would expect or avail herself of in life outside the
> prison wall.');  Malsh [v. Austin], 901 F. Supp. [757] at 762 [(S.D.N.Y.
> 1995)](dental problems not serious medical need); Tyler v. Rapone, 603 F. Supp.
> 268, 271-72 (E.D. Pa. 1985)(toothache does not qualify as a 'serious medical
> need'); see also, Nance [v. Kelly], 912 F.2d [605] at [(2d Cir. 1990)] at 607
> (discussing cases that have met the 'serious medical needs' requirement).

---

[3]     Plaintiff may argue that he did not allege in Deong that his filling had fallen out as he
does now, so this claim is distinct.  Even if the filling did fall out, this would bear on
potential damages arising out of the alleged failure to replace the temporary filling at
issue in the Deong case, as opposed to creating a separate cause of action.

> Plaintiff's requests for dental and optometric appointments involved symptoms that were neither urgent, degenerative, painful or life threatening.  Nance, 912 F.2d at 607.  Delay, on this record, did not constitute deliberate indifference to a serious medical need and does not constitute cruel and unusual punishment.

See, Hanton v. Deong, 3:98cv1648(JCH)(HBF), Corrected Ruling On Motion For Summary Judgment, April 8, 2002, Exhibit E, pgs. 26-27.  This holding applies with equal force to the plaintiff's present claims.

Additionally, it should be noted that the plaintiff's primary complaint regarding his dental claim concerns the Department of Correction's failure to replace his temporary filling and/or attend to his dental needs regarding the tooth in question, tooth number 17, in a timely fashion. See, Exhibits A & B.  The plaintiff appears to contend that this failure commenced in November of 1997 and continued at least until this suit was filed in June of 2002.  See, Exhibits A & B. The plaintiff conveniently neglects to mention that during the aformentioned time period, November of 1997 through June of 2002, he refused dental care and frustrated efforts by dental staff to provide care.  In fact, it should be noted that the plaintiff continued to refuse dental care and frustrate efforts by dental staff to provide care up until July of 2004.  A quick perusal of the plaintiff's dental record, Attachment 2 to Exhibit C, and a review of defendant Shivy's affidavit, Exhibit C, make this abundantly clear:

- On June 8, 1998, Dr. Shivy examined plaintiff's tooth number 17 and determined that it should be extracted, and on June 8, 1998, at the plaintiff's request, an appointment was made for the extraction of plaintiff's tooth number 17 for

August 25, 1998.  On August 25, 1998, the plaintiff refused to have tooth number 17 extracted.  Exhibit C, ¶¶ 11-15.

- On September 3, 2002, Dr. Craig McDonald, a Department of Correction dentist, examined plaintiff's tooth number 17, noted that there were no symptoms for tooth number 17, noted that the temporary filling was intact for tooth number 17, noted that the plaintiff was scheduled to have tooth number 17 filled, but that the plaintiff refused to sign the fee form for the filling and refused to have tooth number 17 filled.  Exhibit C, ¶ 23.

- On November 26, 2002, Dr. McDonald was scheduled to examine the plaintiff, but the plaintiff did not keep the appointment and refused to see Dr. McDonald, even after the plaintiff was called three times.  Exhibit C, ¶ 24.

- On June 24, 2004, Dr. Dara DeFlorio, another Department of Correction dentist, noted that the plaintiff refused to pay the three dollar fee for an x-ray of tooth number 17, even after it was explained to the plaintiff that the last x-ray of tooth number 17 was taken on August 21, 2002, and that an updated x-ray was needed before tooth number 17 could be pulled.  Dr. DeFlorio further noted that the plaintiff then left the clinic.  Exhibit C, ¶ 29.

Clearly, the plaintiff was not suffering from any serious dental condition.

Moreover, it should be noted that Dr. Shivy examined the plaintiff two additional times, November 16, 1998 and September 28, 1999, during the time period in question, November 1997 through June 2002, and that on neither date did the plaintiff complain about or even mention

tooth number 17.  Exhibit C, ¶¶ 19-20.  Again, evidence that tooth number 17 was not causing pain and that the plaintiff was not in distress.

Finally, it should be noted that even though the plaintiff refused dental care and frustrated efforts by dental staff to provide care, the Department of Correction dental staff, in the person of Dr. McDonald, on December 4, 2002, did manage to fill tooth number 17, and, in the person of Dr. Jack Murphy, another Department of Correction dentist, on July 22, 2004, did manage to extract tooth number 17.  Exhibit C, ¶¶ 26, 31.  Surely, at no time did the condition of plaintiff's tooth number 17 constitute a serious medical need, and even if it did, the actions of the Department of Correction dental staff never rose to the level of deliberate indifference.

It should also be noted that defendants Malcolm, Marto, and McIntosh are sued based on their failure to respond plaintiff's letters of complaint concerning his dental care.  As discussed below in argument (I), failure to respond to or investigate a letter of complaint is not a sufficient basis upon which to establish liability under 42 U.S.C. § 1983.

I.      **Plaintiff Fails To Allege Adequate Personal Involvement On The Part Of Defendants Marto, Mcintosh And Malcolm Concerning The Dental Claim**

It appears that plaintiff alleges that although he wrote to defendants Marto, McIntosh and Malcolm, and that they responded to him on numerous occasions, they are somehow liable for his problems concerning tooth number 17.  The plaintiff never alleges that defendants Marto, McIntosh and Malcolm ever examined him or treated him.  Most importantly, the plaintiff never alleges that defendants Marto, McIntosh or Malcolm should have examined him or treated him.  Moreover, the plaintiff never alleges that defendants Marto, McIntosh or Malcolm had a duty to

procure an examination and/or treatment for him. As discussed below, these allegations are insufficient to sustain a cause of action against defendants Marto, McIntosh and Malcolm under 42 U.S.C. § 1983.

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." Rizzo v. Goode, 423 U.S. 362, 370-71 (1976)(quoting 42 U.S.C. § 1983). Otherwise put, a "plaintiff must...allege a tangible connection between the acts of the defendants and the injuries suffered. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). Thus, in order to be held liable under 42 U.S.C. § 1983, the defendant must have a role in subjecting the plaintiff to a deprivation of a federally guaranteed right. That is to say, a showing of personal involvement is a necessary prerequisite for establishing liability under § 1983. See, e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973), rev'd on other grounds, Graham v. Connor, 490 U.S. 386 (1989); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).

In the prison context, "[a] supervisory official is liable for constitutional violations if he or she (1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).

The complaint is devoid of allegations that Marto, McIntosh and/or Malcom had any involvement in the dental-related decisions and actions challenged by plaintiff. It appears that

plaintiff is seeking to hold these defendants liable solely because they hold supervisory authority in the Connecticut Department of Correction.  These allegations simply do not suffice.  In order to state cognizable § 1983 claim, therefore, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the...chain of command."  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).  Moreover, the Supreme Court has ruled that the doctrine of respondeat superior does not apply under 42 U.S.C. § 1983.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978).

The fact that plaintiff may have complained to defendants Marto, McIntosh and/or Malcolm is immaterial.  "The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."  Watson v. McGinnis, 964 F.Supp. 127, 130 (S.D.N.Y. 1997).  Indeed, "[i]t is well established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."  Higgins v. Artuz, 1997 WL 46505 at *7 (S.D.N.Y. 1997); See also, e.g., Rivera v. Goord, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (Defendant "merely asserts that he wrote to these [supervisory] defendants [including the Commissioner and Supt.] complaining about the conduct of various Medical and Correctional Defendants and that his complaints were ignored.  These allegations are insufficient to hold these Official/Supervisory Defendants liable under § 1983."); Woods v. Goord, 1998 WL 740782 at *6 (S.D.N.Y. Oct. 23, 1998) ("Receiving letters or complaints, however, does not render [Supt.]Artuz personally liable under § 1983."); Cox v. Colgane, 1998 WL 148424 at *9

(S.D.N.Y. Mar. 27, 1998) (ignoring letter and request for action not sufficient). Thus, even if plaintiff did complain to defendants Marto, McIntosh and/or Malcolm and even if those complaints were ignored, they cannot be liable under 42 U.S.C. § 1983.

In sum, therefore, plaintiff fails to state a viable claim against defendants Marto, McIntosh and/or Malcolm.

**J.      Plaintiff's Official Capacity Claims AgainstThe Defendants Are Improper**

It is well established law that the plaintiff's claims against defendants McIntosh and Malcolm in their official capacity are barred. See, Exhibits A & B, pg.1. Absent a waiver by the State, or valid Congressional override, the Eleventh Amendment bars a damages action against a state actor in federal court. Kentucky v. Graham, 413 U.S. 159, 169, 105 S.Ct. 3099, 3107 (1985); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355 - 1356 (1974); Ford Motor Company v. Department of The Treasury of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 350 - 351 (1945). "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057 (1978) (Per Curiam) (relief against State of Alabama and Alabama Board of Corrections overturned).

The Eleventh Amendment bar applies when a state or state officials are sued for damages in their official capacity. Kentucky v. Graham, 473 U.S. 159, 170, 105 S.Ct. 3099, 3107 (1985); Cory v. White, 457 U.S. 85, 90, 102 S.Ct. 2325, 2328 - 2329 (1982); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355 - 1356 (1974). Indeed, a cause of action under 42 U.S.C. §1983 requires that it be brought against a person; neither a state or a state agency is a person within the meaning of 42 U.S.C. §1983, nor is a state official sued in his official capacity for money damages. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70 - 71, 109 S.Ct. 2304,

2311 - 2312.  And even Section 1983 does not override a state's Eleventh Amendment immunity.

<u>Quern v. Jordan</u>, 440 U.S. 332, 342 (1979).

     Thus, those claims brought by the plaintiff against defendants McIntosh and Malcolm in their official capacity must be dismissed, as they are barred by the Eleventh Amendment.

## IV.  <u>CONCLUSION</u>

     For the foregoing reasons, the defendants respectfully request that their motion to dismiss be granted.

DEFENDANTS,
Mary Marto, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:  /s/_____
    Kathleen A. Keating
    Assistattorney General
    Federal Bar No. ct25247
    110 Sherman Street
    Hartford, CT  06105
    Telephone No.:  (860) 808-5450
    Fax No.: (860) 808-5591
    E-Mail:  kathleen.keating@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 16th day

of August 2004:

James Hanton, Inmate No. 166178
Willard-Cybulski Correctional Institution
391 Shaker Road
Enfield, CT 06082

           ___/s/_____

           Kathleen A. Keating
           Assistant Attorney General