# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JAMES HANTON                :
                                 :            PRISONER
      v.                         :    Case No. 3:02CV997(CFD)
                                   :
MARY MARTO, et al.[1]       :

## RULING ON PLAINTIFF'S MOTION FOR EMERGENCY INJUNCTION AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff James Hanton ("Hanton"), an inmate confined in the custody of the Connecticut Department of Correction ("DOC"), commenced this civil rights action pro se under 42 U.S.C. § 1983. He alleges that defendants Shivy, Marto, Malcolm and McIntosh were deliberately indifferent to his need for dental care and that defendants Clifton, Penn and Kelley deprived him of a portion of his files containing legal documents. Hanton was confined at the Cheshire Correctional Institution in Cheshire, Connecticut ("Cheshire"), during the time relating to his dental claim and at the Radgowski Correctional Institution in Uncasville, Connecticut ("Radgowski"), during the time relating to his document claim.

Hanton has filed a motion for emergency injunction seeking an order compelling dental treatment. Defendants have filed a motion for summary judgment. For the reasons that follow, Hanton's motion for injunction is denied as moot and defendants' motion for summary judgment is granted.

---

[1]The named defendants are Mary Marto, Esther McIntosh, Cheryl Malcolm, V. Shivy, Ulysses Clifton, Captain Penn and Captain Kelley. Their respective roles are explained, below, in the text. Plaintiff seeks damages against all defendants in their individual capacities. He also seeks injunctive relief from defendants McIntosh and Malcolm in their official capacities.

I.      Standard of Review for Summary Judgment

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991). See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

II.    Facts[2]

Because the two claims of Hanton in his complaint – his dental claim and his property claim – are separate, they will be described that way.

---

[2]The facts regarding the claim of deliberate indifference to a serious dental need are taken from defendants' Local Rule 56(a)1 Statement and the materials attached to the defendants' memorandum. Despite specific notice from the defendants regarding the proper response to a motion for summary judgment, which included a copy of Local Rule 56 (see doc. #18), Hanton has not filed any opposition directed to the merits of defendants' motion. However, he filed two objections to the defendants' filing of their motion for summary judgment beyond the time set forth in the scheduling order in this case. Since August 2004, when the court granted an extension of time to file the motion, however, Hanton has filed nothing. Thus, defendants' facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56 (a)2.") However, in this opinion, the Court has "examin[ed] the moving party's submission to determine if it has met its burden of demonstrating that no material fact remains for trial." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)
The facts regarding Hanton's claim of deprivation of legal materials are, in part, taken from a ruling of this court in Hanton v. Tamburo , No. 3:96cv2644 (DJS), filed on February 4, 2003. (See Defs.' Mem. Ex. G.)

_____ 1.  The Dental Claim[3]

On November 17, 1997, while Hanton was incarcerated at The MacDougall Correctional

Center in Suffield, Connecticut ("MacDougall"), he was placed on the dental services waiting list

to have a temporary filling replaced with a permanent one.  He was transferred to Cheshire on

April 17, 1998.  On June 8, 1998, defendant Dr. Victor Shivy, the lead dentist at Cheshire and an

employee of the University of Connecticut Health Center, took an X-ray and examined Hanton's

tooth at issue here, described in the DOC records as tooth #17.  Defendant Shivy determined that

the tooth had "temporary sensitivity" when Hanton ate and was "sensitive to percussion."  Dr.

Shivy opined that the tooth should be extracted and scheduled an appointment for the extraction

at Hanton's request.

The extraction was scheduled for August 25, 1998.  On that date, Hanton refused to have

the tooth extracted, but Dr. Shivy did not consider the condition of the tooth "to present a serious

medical issue."  Defendant Shivy again examined Hanton on November 16, 1998, and September

28, 1999.  At neither time did Hanton complain about tooth #17.

Dr. Craig McDonald (another DOC dentist) examined Hanton on August 21, 2002, and

noted that tooth #17 exhibited some decay, but was stable and did not cause any percussion pain.

Dr. McDonald recommended that the temporary filling should be replaced but, if the tooth

became symptomatic, it should be extracted.  On September 3, 2002, Dr. McDonald noted there

were no such symptoms and the temporary filling was intact.  He noted that Hanton was

_____

[3]The following facts are taken, for the most part, from the affidavit of Dr. Victor Shivy and Hanton's DOC
dental records, attached to defendants' memorandum.

scheduled to have the tooth re-filled, but that Hanton had refused to sign the fee form for the filling and refused to have the tooth filled.

Another appointment with Dr. McDonald was scheduled for November 26, 2002. Although he was called three times, Hanton refused to keep the appointment. Hanton finally did see Dr. McDonald on December 4, 2002. Dr. McDonald noted that tooth #17 was sensitive to temperature and exhibited mild sensitivity to percussion. He indicated, however, that tooth #17 was not causing pain and was "not in distress." Dr. McDonald filled tooth #17 and indicated that if the tooth caused any further pain or problem, it should be extracted.

On June 18, 2004, Hanton told Dr. DeFlorio (another DOC dentist) that tooth #17 needed to be extracted. On June 24, 2004, Dr. DeFlorio explained to Hanton that the last X-ray of tooth #17 had been taken in August 2002, nearly two years earlier, and that an updated X-ray was needed before the tooth could be extracted. Hanton refused to pay the $3.00 fee to have an X-ray taken of tooth #17 and left the dental clinic.

On July 22, 2004, Dr. Jack Murphy (another DOC dentist) extracted tooth #17.

Defendants Marto, McIntosh and Malcolm were health care administrators for the DOC who communicated with Hanton concerning his dental care, as described below.

## 2.  The Property Claim

In January 2002, Hanton was transferred to Radgowski. At that time, Hanton had eight or nine boxes of materials, including documents. During his "intake" Defendant Clifton[4] informed Hanton that, pursuant to departmental rules, he was only allowed to keep six cubic feet of property in his cell. Clifton told Hanton that his boxes of property exceeded that amount but he

_____

[4]Defendants Clifton, Penn and Kelley are described as "custody officers" in the DOC.

could designate a portion of his property to be sent to a family member. Hanton asked that the excess documents be sent to his daughter, which they were.

III.     Discussion

Defendants raise ten grounds in support of their motion for summary judgment: (1) Hanton has adequate post-deprivation remedies under state law for his property claims; (2) Hanton fails to adequately allege a claim of retaliation regarding the property claims; (3) Hanton fails to state a claim for denial of access to the courts; (4) Hanton fails to allege the personal involvement of defendants Penn and Kelley in his property claim; (5) the property claim is improperly joined with the dental claim; (6) defendants are protected by qualified immunity; (7) Hanton's dental claim is barred by collateral estoppel; (8) Hanton fails to state a claim for deliberate indifference to a serious dental need; (9) Hanton fails to allege sufficient personal involvement of defendants Marto, McIntosh and Malcolm; and (10) Hanton's claims against the defendants in their official capacities are barred by the Eleventh Amendment. Following considering Hanton's motions for an injunction and review, the court will consider several of the grounds for summary judgment.

A.     Motion for Emergency Injunction and Motion for Review

On July 1, 2004, Hanton filed a motion for emergency injunction seeking an order that his tooth be extracted. The medical records supplied by defendants in support of their motion for summary judgment show that Hanton's tooth was extracted on July 22, 2004. Thus, this motion is denied as moot.

On January 12, 2005, Hanton filed a motion seeking review of the magistrate judge's ruling granting the defendants an extension of time to file their motion for summary judgment.

Although captioned "Notice of Appeal," the motion indicated that the document is an objection to the magistrate judge's ruling. Objections to the ruling of a magistrate judge must be filed within ten days from the date of the ruling to which the objection is directed. See 28 U.S.C. § 636(b) (written objection to ruling must be filed within **ten** days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 2 of the Local Rule for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary of HHS, 892 F.2d 15, 16 (2d Cir. 1989) (failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit). This document was filed nearly five months after the court's August 12, 2004 ruling granting the motion for extension of time. Thus, the motion is denied as untimely filed.

Even if the motion were timely, it would be denied. On May 21, 2004, the court denied defendants' motion for judgment on the pleadings without prejudice to including their arguments in a motion for summary judgment. Defendants filed their motion to extend the period for filing their summary judgment motion on June 21, 2004. Although the motion was filed after the time set in the scheduling order had passed, defendants filed their motion for summary judgment within the extended period for filing such a motion granted by the Court. See Doc. #57.

B.    Defendants' Motion for Summary Judgment

1. The Dental Claim

A.    Eleventh Amendment Immunity

Defendants argue that the official capacity claims for damages against defendants McIntosh and Malcolm are barred by the Eleventh Amendment.

7

Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure Salvors, 458 U.S. 670, 684 (1982).  Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity which protects the state from suits for monetary relief also protects state officials sued for damages in their official capacity.  See Kentucky v. Graham, 473 U.S. 159 (1985).  A suit against a defendant in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

Defendants are correct that Hanton cannot obtain damages from defendant McIntosh and Malcolm in their official capacities.  Although Hanton does not indicate in his prayer for relief the capacity in which he brings his damages claims against these two defendants, he has clearly indicated in the case caption that he has named defendants McIntosh and Malcolm in their official capacities to obtain injunctive relief and in their individual capacities for damages.  Thus, Hanton does not seek damages from either defendant in her official capacity.  Defendants' motion for summary judgment is denied on this ground.

B.     Collateral Estoppel

Defendants argue that Hanton's claims regarding the denial of dental care are barred by the doctrine of collateral estoppel.  They direct the court to Hanton v. Deong, Case No. 3:98cv1648(HBF), and have provided a copy of the court's April 8, 2002 ruling granting defendants' motion for summary judgment.

8

Hanton v. Deong concerned Hanton's medical and dental treatment while he was principally confined at MacDougall[5]. Although the case primarily concerns medical treatment, there is a claim regarding a delay in dental treatment. The court granted summary judgment on the dental claim because there were no allegations of significant dental pain. The issue there was the length of the wait for routine dental treatment.

For the most part, this case concerns Hanton's dental treatment at Cheshire. In addition, the claims concern the alleged failure to treat his dental condition despite repeated complaints of severe dental pain.

The doctrine of collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Epperson v. Entertainment Express, Inc., 242 F.3d 100, 108 (2d Cir. 2001) (quoting United States v. Hussein, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks and citation omitted)). Mutuality of parties is not required for invocation of the doctrine of collateral estoppel. The only requirement is that the party against whom the doctrine is applied must have had the opportunity to litigate the merits of the issue in the prior action. See Blonder-Tongue Labs., Inc. v. University of Ill. Found., 402 U.S. 313, 329 (1971). The court is not required to permit "repeated litigation of the same issue as long as the supply of unrelated defendants holds out." Id.

---

[5]Hanton was transferred to Cheshire from MacDougall on April 17, 1998.

While the dental claim in this case may concern the same filling that was at issue in the previous case, the facts alleged here concern Hanton's care at Cheshire and the failure of the correctional officials to treat him for complaints of "great" tooth pain. The claims in the prior case relate to the period from July 1997 through August 1998, while Hanton was principally confined at MacDougall. In the interest of maintaining a manageable number of defendants, the court often has considered in separate cases an inmate's claims concerning his treatment at different correctional facilities. Because this case concerns a later time period and treatment at a different correctional facility, however, the court concludes that the facts pertaining to these claims were not all present in the prior action and this claim was not litigated in that case.

In addition, some of the defendants from Cheshire were not included in the prior case. Defendants argue that Hanton should have filed an amended complaint to include these defendants in the prior action. However, Hanton alleges that he lost his temporary filling and began to experience severe tooth pain in December 2000. By that time, the discovery period in the prior case had passed. The Scheduling Order in the prior case set the discovery deadline at May 2, 2000. Although defendants were granted additional time to respond to Hanton's discovery requests, the court issued a pretrial order on December 26, 2000. Thus, at the time Hanton allegedly began to experience severe tooth pain, the discovery period had ended and the court was preparing the case for trial. The court denied Hanton's April 2001 motion for leave to file a supplemental complaint.

Hanton did not have the opportunity to include in the previous case defendants involved with his situation at Cheshire and claims arising there. Accordingly, the doctrine of collateral

estoppel is inapplicable. Defendants' motion for summary judgment is denied on the ground that the dental claim is not barred by collateral estoppel.

      C.    <u>Deliberate Indifference to Serious Dental Need</u>

Defendants argue that Hanton fails to state a claim that defendant Shivy was deliberately indifferent to a serious dental need.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, Hanton must allege "acts or omissions sufficiently harmful to evidence deliberate indifference" to his serious medical need. <u>Id.</u> at 106. He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. <u>See id.</u> at 104-05. Mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act." <u>McCloud v. Delaney</u>, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing <u>United States ex rel. Hyde v. McGinnis</u>, 429 F.2d 864 (2d Cir. 1970)).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at 106. A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." <u>Tomarkin v. Ward</u>, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting <u>Estelle</u>, 429 U.S. at 105-06). Inmates do not have a constitutional right to the treatment of their choice. <u>See</u> <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986). Thus, mere disagreement with prison officials about what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment.

See Ross v. Kelly, 784 F. Supp. 35, 44 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1992).

There are both subjective and objective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  The alleged deprivation must be "sufficiently serious" in objective terms.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  See also Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain").  The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition:  "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Chance v. Armstrong, 143 F.3d 698, 702 (2d. Cir. 1998) (citation omitted).  In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious.  See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, Hanton also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind."  Hathaway, 37 F.3d at 66.  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

12

exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837

(1994)).

> Ordinarily, a tooth cavity is not a serious medical condition, but that is at least in
> part because a cavity is so easily treatable. Absent intense pain or other exigency,
> the treatment of a cavity (in or out of prison) can safely be delayed by the dentist's
> schedule or the patient's dread or neglect, can be subject to triage or the
> management of care, can be mitigated or repaired temporarily, and can be
> coordinated with other related conditions that need to be treated together.
> Nonetheless, a tooth cavity is a degenerative condition, and if it is left untreated
> indefinitely, it is likely to produce agony and to require more invasive and painful
> treatments, such as root canal therapy or extraction.

Harrison v. Barkley, 219 F.3d at 137.

Hanton alleges that he was placed on the list for a dental visit in November 1997 and that

when he finally saw Dr. Shivy in November 1998, his tooth was painful but defendant Shivy

refused to perform the scheduled filling replacement. Hanton also alleges that he wrote letters to

various correctional officials to obtain the required filling replacement. He received responses to

some letters merely stating that he was scheduled to see the dentist. Hanton alleges that his

filling fell out in December 2000, causing him great pain, and that Defendant Shivy did not

respond to his request for dental treatment.

Hanton has provided no evidence to support these allegations. On the contrary, the dental

records submitted by defendants show that Hanton omitted several dental examinations from his

allegations, including the June 1998 visit when Dr. Shivy determined that the tooth should be

extracted, as well as the agreed-upon and scheduled appointment to extract the tooth that Hanton

refused to keep. In addition, dental records from November 1998 and September 1999 indicate

that Hanton made no complaints about this tooth.

13

Although Hanton alleges that his filling fell out in December 2000, he provides no objective medical evidence supporting his allegation.  There are no records documenting a missing filling or indicating that Hanton suffered from substantial pain that interfered with any of his daily activities or that he sought immediate treatment by filing a medical request for treatment from Dr. Shivy.  The dental records provided by defendants do not reference any lost filling in December 2000.  Instead, the entry for August 2002 refers to the intact filling in tooth #17.

Allegations in a complaint are insufficient to oppose a properly supported motion for summary judgment.  See, e.g., Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995)(party opposing summary judgment may not rely on "mere allegations or denials" contained in his pleadings).  Defendants have provided evidence to show the defendant Shivy attempted to provide dental care, but that Hanton refused treatment.  Hanton has not met his burden of presenting evidence in opposition to the motion to demonstrate a genuine issue of material fact regarding his dental care by defendant Shivy.  Accordingly, defendants' motion for summary judgment is granted as to the claim against defendant Shivy.

D.     Personal Involvement of Marto, McIntosh, Malcolm

Defendants contend that Hanton fails to allege facts demonstrating the personal involvement of defendants Marto, McIntosh and Malcolm in his dental claim.

Defendants Marto, McIntosh and Malcolm are DOC health care administrators.  They do not provide health care.  They review requests for medical and dental care and respond to inmate grievances.  Hanton alleges that he wrote various requests for dental care and that these defendants responded to his requests.  For example, Defendant Marto responded to his May 3, 1999 letter to the warden and his May 24, 1999 letter to the deputy warden.  She informed

14

Hanton that he was scheduled to see the dentist.  In September 1999, defendant McIntosh responded to Hanton's August 9, 1999 letter to defendant Marto and his September 8, 1999 letter to the corrections commissioner and indicated that she would discuss a transfer to enable Hanton to receive dental care.  Defendant Malcolm referred Hanton's August 23, 1999 letter to defendant McIntosh and the warden.  Defendant McIntosh informed Hanton that he would be scheduled for dental care.  In February and April 2001, Hanton wrote to defendants Malcolm and McIntosh regarding a lost filling.  He alleges that they did not respond to his letters.  Hanton has provided no evidence in opposition to defendants' motion for summary judgment to support these allegations.

Hanton does not allege that these three defendants provided dental care to inmates.  Thus, his only claim against them is that they did not ensure he obtained the desired dental care in response to his various letters.  Thus, the court considers the claims against these three defendants under the standard applied to supervisory officials.

"A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort."  Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes liability only on the official causing the violation.  Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases.  See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Prince v. Edwards, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, ... nor may a defendant be liable merely by his connection to the events through links in the chain of command.")(internal quotations and citation omitted).

15

> [A] supervisor may be found liable for his deliberate indifference
> to the rights of others by his failure to act on information indicating
> unconstitutional acts were occurring or for his gross negligence in
> failing to supervise his subordinates who commit such wrongful
> acts, provided that the plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

To demonstrate deliberate indifference, Hanton must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference" to a serious medical need.  Estelle, 429 U.S. at 106.  He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel.  See id. at 104-05.  As stated above, mere negligence will not support a section 1983 claim; the conduct complained of must "shock the conscience" or constitute a "barbarous act."  McCloud, 677 F. Supp. at 232.

Thus, to prevail on his claims, Hanton must demonstrate that defendants Marto, McIntosh and Malcolm inferred that their failure to take further action in response to Hanton's letters would result in a substantial risk of serious harm.  "'[A]n official's failure to alleviate a significant risk that he should have perceived but did not' will not serve as a basis for an Eighth Amendment violation.  The subjective element must rise to the level of recklessness, not mere negligence."  Burgess v. Morse, 259 F. Supp. 2d 240, 249 (W.D.N.Y. 2003) (quoting Farmer, 511 U.S. at 838).

Courts within the Second Circuit have held that mere receipt of a letter from an inmate is insufficient to impute personal involvement on the correctional official to whom the letter was addressed.  See Johnson v. Goord, No. 01 Civ. 9587PKC, 2004 WL 2199500, at *7 (S.D.N.Y. Sept. 29, 2004) (citing cases); Burgess v. Morse, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003)

16

("[T]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement.") (citation omitted).

Although these defendants responded to several of Hanton's letters and, thus, were aware of his dental complaints, Hanton has provided no evidence in opposition to defendants' motion for summary judgment from which the court could infer that any of these defendants were deliberately indifferent to his dental needs.  In response to his letters, these defendants placed Hanton on the list for dental treatment.  Hanton has provided no evidence that any of these defendants affirmatively disregarded his right to dental treatment or knew that he required immediate treatment.  Finally, the DOC dental records show no indifference to Hanton's situation by the dentists, who were seeing him on a regular basis.  If no failure of dental care or indifference by the treating dentists has been shown, then Marto, McIntosh and Malcolm were not "deliberately indifferent" to Hanton in responding to his letters.   Accordingly, Hanton has failed to meet his burden in opposition to defendants' motion of providing evidence to demonstrate a genuine issue of material fact.  Defendants' motion for summary judgment is granted as to the claims against defendants Marto, McIntosh and Malcolm.

## 2.  The Property Claim

Defendants argue that Hanton fails to state a claim for deprivation of property without due process because there are adequate post-deprivation remedies available in state court.  In response to defendants' earlier motion for judgment on the pleadings, Hanton indicated that he was not asserting a claim for deprivation of property.  Rather, he characterized his claim as denial of access to the courts because of the actions of defendants Clifton, Penn and Kelley.  In addition, Hanton referenced retaliatory action by these defendants.

In light of Hanton's statement, the court considers this claim only as a claim of denial of access to the courts or retaliation for exercising his First Amendment right of redressing grievances through legal action. Accordingly, the motion for summary judgment is denied as moot as to any claim for deprivation of property without due process.

      A.     Denial of Access to the Courts

The defendants contend that Hanton fails to state a claim for denial of access to the courts based upon his allegations that he was required to send home some of his boxes of legal materials.

In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court clarified an inmate's right of access to the courts and standing to bring a claim for the violation of that right. The Court held that to show that the defendants violated his right of access to the courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct. See id. at 349. As an illustration, the Court noted that if an inmate were able to show that, as a result of the defendant's action, he was unable to file an initial complaint or petition, or that the complaint he filed was so technically deficient that it was dismissed without a consideration of the merits of the claim, he could state a claim for denial of access to the courts. See id. at 351. The Court, however, specifically disclaimed any requirement that prison officials ensure that inmates have sufficient resources to discover grievances or litigate effectively once their claims are brought before the court. See id. at 355.

The "actual injury" described above cannot derive from "just any type of frustrated legal claim." Id. at 354. Inmates must be afforded access to court to file a direct appeal, a petition for writ of habeas corpus or a civil rights action challenging the denial of a basic constitutional right.

18

"Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id. at 355.

The Connecticut Claims Commissioner can authorize suit on any claims for which the State of Connecticut, if it were a private person, would be liable, see Conn. Gen. Stat. § 4-160(a), and may hear all claims against the State where suit is not otherwise authorized by law.  See Conn. Gen. Stat. § 4-142.  These claims, regarding injury to person or damage to property, include medical malpractice, see Conn. Gen. Stat. § 4-160(b), and claims against state employees for damage or injury that was not wanton, reckless or malicious, that was caused in the exercise of the employee's duties.  See Conn. Gen. Stat. § 4-165.

Hanton alleges that, in early January 2002, when he was transferred from Cheshire to Radgowski, defendant Clifton (at Radgowski) required him to send legal material to someone outside the facility or the material would be destroyed.  Clifton's order was based on a DOC policy limiting the amount of files allowed in cells.  Hanton then sent the excess materials to a family member.  Hanton alleges further that defendants Penn (a corrections captain) and Kelley (another corrections captain) ignored repeated requests for return of the materials.  Hanton states that two cases before the Connecticut Claims Commissioner were dismissed in March 2002, because he was unable to file an argument in support of the claims without the legal materials. Hanton also states he requested, but did not receive, assistance from the Claims Commissioner in obtaining the needed materials.

Hanton does not indicate the subject matter of the two claims. However, it appears that the claims involved negligence allegations against correction department physicians arising from treatment to Hanton's knee and back.   Upon reviewing the nature of the claims, and the state

statutes regarding the authority of the Claims Commissioner, the court concludes that the cases did not challenge Hanton's conviction or the denial of basic constitutional rights. In addition, Hanton was not prevented from filing his actions with the Claims Commissioner. The fact that he claims he was not able to litigate these claims effectively is not cognizable as a claim for denial of access to the courts. Thus, defendants' motion for summary judgment is granted as to any claim for denial of access to the courts.

      B.    <u>Retaliation</u>

Hanton also alleged that defendant Clifton's actions in requiring him to send home his legal materials were in retaliation for Hanton's filing of lawsuits against corrections officers. Defendants contend that Hanton fails to allege facts to state a claim for retaliation.

To state a claim for retaliation, Hanton must allege facts demonstrating "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials." <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir. 2003). Generally, a plaintiff can withstand a motion to dismiss, or for judgment on the pleadings, if he alleges facts that, if proven, would support the cause of action. Because of the "ease with which claims of retaliation may be fabricated," however, the court "examines prisoners' claims of retaliation with skepticism and particular care." <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983).

In his amended complaint, Hanton alleges that upon his arrival at Radgowski, defendant Clifton searched his property and legal material. He alleges further that "[a]fter discovering the

20

plaintiff had lawsuits filed against fellow officers defendant Clifton confiscated the plaintiff's

legal materials for pending civil cases" and required that Hanton mail some of his legal materials

to a family member[6].

    As the defendants argue, Hanton does not allege that defendant Clifton made any

statements indicating a retaliatory motive for his actions or that defendant Clifton was a

defendant in any action filed by Hanton at the time of the incident.

    In addition, the court may consider the court's decision on Hanton's motion for temporary

injunctive relief filed in <u>Hanton v. Tamburo</u>, 3:96cv2644 (DJS) (D, Conn. Ruling and Order

dated Feb. 4, 2003), a copy of which is attached to defendants' memorandum.  In that case, the

court noted that Hanton was permitted to select which of his legal materials were sent out of the

institution to his family.

    The court concludes that Hanton has failed to allege facts stating a claim for retaliation.

He has alleged no facts demonstrating that the action of correctional staff requiring that

materials of Hanton's choosing be sent out of the institution was taken in retaliation for Hanton's

filing lawsuits against correctional officers in other facilities.  In addition, in opposition to

defendants' motion for summary judgment, Hanton has presented no evidence supporting these

allegations.  Accordingly, defendants' motion for summary judgment is granted as to this claim.

Because defendants' motion has been granted as to all claims regarding Hanton's legal property,

the court need not consider defendants' arguments regarding the personal involvement of

defendants Penn and Kelley.

---

[6]Although Hanton first alleges that Clifton "confiscated" those materials, he then stated they were sent to his family.  <u>See</u> Supplemental Complaint at ¶ 17.

V.     Conclusion

Hanton's Motion for Emergency Injunction [**doc. #53**] is **DENIED** as moot.  His motion

seeking review of the magistrate judge's ruling [**doc. #59**] is **DENIED**.

Defendants' Motion for Summary Judgment [**doc. #55**] is **GRANTED**.  The Clerk is

directed to enter judgment in favor of defendants and close this case.

**SO ORDERED** this 17th day of February, 2005, at Hartford, Connecticut.


  /s/ CFD_____
                        Christopher F. Droney
                        United States District Judge

22